## IN the MATTER of $3,166,199

Arkansas Highway Police *v.* Crittenden County Prosecuting
Attorney's Office; Brent Davis, Prosecuting Attorney for the
Second Judicial District; and State of Arkansas,
Nominal Plaintiff Below

98-957                                    987 S.W.2d 663

Supreme Court of Arkansas
Opinion delivered March 18, 1999

Robert L. Wilson, Chief Counsel; and Lawrence W. Jackson, William L. Wharton, and Calvin R. Gibson, Staff Attorneys, for appellant.

Mark Pryor, Att'y Gen., by: Kelly K. Hill, Deputy Att'y Gen., for appellees.

LAVENSKI R. SMITH, Justice. This is an appeal from the Circuit Court of Crittenden County and involves the seizure and forfeiture of over $3.1 million found in the course of a random search of a tractor-trailer truck on an Arkansas highway. The litigation is a dispute between state and local authorities over the proper jurisdiction for forfeiture proceedings. The case requires a first-impression interpretation of Ark. Code Ann. § 5-64-505 (Repl. 1997). We affirm in part and reverse in part.

At approximately 8 p.m. on March 7, 1998, Roberto V. Zamarripa, a truck driver, stopped at the Lehi Weigh Station on Interstate 40 in Crittenden County for a routine check by the Arkansas Highway Police ("AHP"). Upon entering the cab and sleeper section of the truck, Officer J.R. Smith ("Smith"), the searching officer, discovered alcohol, multiple log books with

entry violations, and several suitcases. When Officer Smith opened the suitcases, he discovered the currency, later determined to be in the amount of $3,166,199. AHP immediately notified its headquarters, which contacted Ray Davis ("Davis"), the liaison officer for the Little Rock office of the Drug Enforcement Agency ("DEA"). Davis "adopted" the seizure pursuant to federal forfeiture law sometime between 8:30 p.m to 10 p.m. and agreed with the AHP that the DEA would process the money.

At approximately 10:20 p.m. to10:30 p.m., Deputy Prosecuting Attorney James C. Hale, Jr. ("Hale Jr.") arrived on the scene with his son, James C. Hale, III ("Hale III") (collectively referred to as "the Hales"), who handles the contract with Crittenden County to pursue state forfeiture actions. The Hales arranged for the funds to be kept in a Marion bank overnight. The Hales directed AHP on proper preservation and chain-of-custody concerns regarding the seized contraband. After giving these directions, the Hales left the scene and AHP transported the money and deposited it in the Marion bank that night. The following day, a Sunday, bank employees counted the money under the supervision of AHP. AHP also conducted "shake tests" on the money to determine if drugs were present on the money.

The procedural facts are somewhat complicated. On Monday, March 9, 1998, Hale Jr. filed a notice of seizure of forfeiture against Zamarripa, the truck driver, for an "uncontested" forfeiture proceeding in Crittenden County Circuit Court. At approximately the same time, AHP retrieved the money from the bank in Marion and transported it to Little Rock to place in AHP's vault. A dispute exists regarding whether Hale Jr. authorized the transportation and deposit of the funds in Little Rock. AHP contends that Hale Jr. authorized this action in anticipation of the DEA taking over the seizure action. The Hales contend that no such permission was given.

Sometime between March 10, 1998, and March 16, 1998, the DEA took physical custody of the money, completing its paperwork confirming the initiation of DEA proceedings by March 16, 1998. During that time, Hale Jr. filed a second notice

of seizure of forfeiture against the owner of the tractor-trailer rig, Omar Saenz, on March 11, 1998.

On March 18, 1998, the Crittenden County Circuit Court entered an *ex parte* order based on a motion filed by the Hales. At that time, no civil or criminal drug forfeiture case was pending in federal or state court, save for the notices of seizure of forfeiture filed against Zamarripa and Saenz in the Crittenden County Circuit Court. The *ex parte* order directed AHP to deposit the money in a bank to be wired to the Crittenden County Prosecuting Attorney's drug-asset account. The order also stated that the currency had been seized by AHP at the weigh station on March 8, 1998.

AHP filed a motion to vacate the order on March 20, 1998, contending that it was without notice, service, written motion, or verified pleading or affidavit as required by Ark. R. Civ. P. 65. The Hales, on behalf of the State of Arkansas, filed their complaint for forfeiture as a civil *in rem* action against the money, along with a notice of pending forfeiture on that same day. AHP and the United States were not joined as parties, nor did either intervene as parties to the civil *in rem* action. Thereafter, on March 20 and March 24, 1998, the circuit court entered agreed orders of forfeiture against Zamarripa and Saenz of which AHP had no knowledge.

AHP next filed on March 27, 1998, a motion to dismiss based on lack of jurisdiction, lack of service, lack of necessary parties, and pendency of another action or, in the alternative, an amended motion to vacate the March 18, 1998, *ex parte* order as that order relates to AHP. The circuit court denied AHP's motion to dismiss on May 8, 1998, finding that it had jurisdiction over the property and that AHP became a party when it filed motions and presented evidence. The circuit court ruled, however, that AHP had no standing to challenge the order and that, despite its previous statement in the March 18, 1998, *ex parte* order, the Crittenden County Prosecuting Attorney, and not the AHP, was the "seizing law enforcement agent" that first seized the money. The circuit court also found that AHP no longer held the money and, therefore, could not comply with the court's March

18, 1998, *ex parte* order directing AHP to turn over the money to the Crittenden County Prosecuting Attorney. The circuit court failed to rule on AHP's motion to vacate. On May 18, 1998, AHP responded to the May 8, 1998, ruling with a motion to reconsider its motion to dismiss and motion to vacate which it claimed it filed pursuant to Ark. R. Civ. P. 12, and asked for specific findings of fact and conclusions of law. AHP also filed its first notice of appeal from the previous orders issued by the circuit court.

On June 24, 1998, AHP filed a second notice of appeal including an appeal from the previous orders and from the denial of its motion to reconsider. The circuit court did not rule on the reconsideration request. Apparently in response, the circuit court entered a judgment on July 16, 1998, finding that AHP was not a party as previously stated in its May 8, 1998, and that AHP did not have standing to object to the circuit court proceedings. The circuit court did not rule on AHP's motions, but made findings of fact and conclusions of law regarding the proceedings in this matter. AHP filed a third notice of appeal on July 22, 1998, again appealing from the previous orders entered by the circuit court.

The United States filed a complaint of judicial forfeiture in the United States District Court for the Eastern District of Arkansas on July 27, 1998, in response to a submission of claim of ownership to the money filed by the Crittenden County Deputy Prosecutor on June 2, 1998. The complaint of judicial forfeiture is now pending as *United States v. $3,166,199*, No. 98 CV-509.

In addition to its appeal from the orders of the circuit court, AHP also filed a petition for writ of certiorari or, alternatively, for prohibition and/or mandamus to the Crittenden County Circuit Court and a request for temporary relief on August 5, 1998. These petitions were denied without prejudice by this Court on September 10, 1998. Shortly thereafter on September 23, 1998, the Arkansas Attorney General's office filed a motion to dismiss the appeal filed by AHP, arguing that AHP was not a party below and, therefore, has no standing to appeal.

## Standing

■ ■    The threshold issue for this appeal is Arkansas Highway Police's standing to object to the trial court's actions on appeal in that they were not a party to the proceedings below. The general rule regarding standing is that an appellate court cannot act upon an appeal taken by one not a party to the action below. *In the Matter of Allen*, 304 Ark. 222, 800 S.W.2d 715 (1990); *Arkansas Dep't of Human Svcs v. Bailey*, 318 Ark 374, 855 S.W.2d 677 (1994); *Quattlebaum and CBM, Inc. v. Gray*, 252 Ark. 610, 480 S.W.2d 339 (1972). Under our rules party status is generally obtained by initiating an action through filing a complaint or responding to a complaint by answer. It is also possible to become a party by intervention under Rule 24 or by joinder under Rule 19. In the instant case, none of these events is in evidence and therefore, ordinarily, AHP would not have standing to bring this appeal. However, we have recognized two other circumstances in which a nonparty may gain standing to pursue appellate review of a trial court's orders. The first occurs when a nonparty seeks relief under Rule 60(k), which provides that an independent action may be filed to relieve a person from judgment who was not actually served with process. *Arkansas Dep't of Human Services v. Bailey*, 318 Ark. 374, 885 S.W.2d 677 (1994). AHP has not sought such relief so it is inapplicable. The other circumstance is the unique set of facts where any appellant, though not a party, has a pecuniary interest affected by the court's disposition of the matter below. In *Allen, supra*, this court noted that it has long recognized an exception to the general rule for one pecuniarily affected by a judgment. *Arkansas State Hwy. Comm'n v. Perrin*, 240 Ark. 302, 399 S.W.2d 287 (1996).

■    We disagree with the trial court's determination that the "seizing law enforcement agency" was the Crittenden County Prosecuting Attorney's Office. Clearly, the AHP was the seizing law enforcement agency as that term is used in Ark. Code Ann. § 5-64-505 (Repl. 1997). Though not specifically defined in the statute, it is apparent from the context that police rather than prosecutors are contemplated by the term. It is undisputed that AHP, for its role in the seizure, is entitled to some portion of the *res* pursuant to Ark. Code Ann. § 5-64-505(k)(2)(iii). The amount

will be impacted by pending litigation in this court and in federal court. We hold, therefore, that AHP has a pecuniary interest affected by the court's action and therefore has standing to bring this appeal.

### Statutory Construction

On the merits, the crucial issue before this court is the interpretation of our forfeiture statute, § 5-64-505. AHP'S first and most critical point on appeal concerns whether AHP's seizure of the *res* on the night of March 7, 1998, and subsequent DEA adoption resulted in a federal seizure or state seizure. AHP contends it resulted in a federal seizure, relying upon the Eighth Circuit federal cases of *Madewell v. Downs*, 68 F.3d 1030 (8th Cir. 1995) and *U.S. v. $12,390.00*, 956 F.2d 801 (8th Cir. 1992). The appellee, on the other hand, contends that due to the "turnover" nature of our statute, a state seizure occurred and that the money remains under the jurisdiction of the circuit court. Appellees cite Seventh and Fifth Circuit cases for authority that the nature of the state statute is determinative. We agree with appellees and hold that our statute vests initial jurisdiction of the *res* in the circuit court of the county where seized. Any subsequent transfer of the *res* requires a circuit court order.

In *Madewell*, the Missouri State Highway Police seized $9,400 in cash incident to an arrest for drug-related charges. The defendant sought return of the currency in state court but before the state court ruled Missouri State Highway Police's seizure was adopted by the DEA. The Missouri State Highway Police delivered the money in the form of two cashier's checks to the DEA without any order from the court. The claimant sued in federal district court seeking return of the money, but the court held adversely to him finding that a valid federal adoption occurred. Upon review, the Eighth Circuit held the adoption effective and that it had the same effect as if the federal agency had originally seized the property on the date the local authority seized it. *Id.* at 1039. The court determined that the Missouri law in effect at the time of the seizure did not require a court order before the prop-

erty could be turned over to federal authority. The court did note that Missouri subsequently enacted a "turnover" statute with specific language vesting jurisdiction of the seized property in state court.

AHP also strongly relies on *$12,390.00*, which held that a voluntary transfer from state authorities to federal authorities before institution of state court proceedings allowed the federal agency to have control of the property for purposes of forfeiture. In *$12,390.00*, a federal agent adopted the seizure immediately with consent of the state authorities. *Id.* State court proceedings were filed by the claimant but subsequent to initiation of federal administrative forfeiture proceedings. This case, like *Madewell*, was decided in Missouri prior to enactment of a "turnover" statute.

Appellee responds to the above cases by citing Fifth and Seventh Circuit federal cases that it contends are more apposite to the instant facts because of relevant Arkansas law. The State cites *United States v. One 1979 Chevrolet C-20 Van*, 924 F.2d 120 (7th Cir. 1991). In that case, local authorities in Illinois seized a van incident to an investigation of suspected drunk driving. An inventory search of the van had revealed a significant quantity of marijuana under the driver's seat. Subsequently, the local authorities requested the Federal Bureau of Investigation to "adopt" the seizure which they did by initiating administrative forfeiture proceedings. Pursuant to applicable state law, the State of Illinois filed a complaint in state court for forfeiture of the van. Approximately one month later, the FBI filed a forfeiture action in federal district court. An Illinois federal district court upheld the adopted seizure by federal authorities but the Seventh Circuit Court of Appeals reversed. It stated, "A local police department may not take seized property and just pass it on as it pleases to the FBI in flagrant disregard of state laws mandating judicial authority for such turnovers." *Id*, at 122. The court followed its own precedent and invalidated the federal adoption where a state statute put control of the *res* in state court and state court proceedings had commenced prior to federal court proceedings. The court stated, "If the federal authorities wanted the van, they were bound to

seek a turnover order from the circuit court of the county in which the van was seized." *Id.*, at 123. *United States v. $79,123.49 in U.S. Cash and Currency*, 830 F2d 94 (7th Cir. 1987). The Fifth Circuit has also recognized that under a state "turnover" statute, it is the seizure by a state agency and not the institution of a formal proceeding which exclusively vests jurisdiction in the state court. *See Scarabin v. Drug Enforcement Administration*, 966 F.2d 989 (5th Cir. 1992).

Interestingly, the Illinois statute in *One 1979 Chevrolet C-20 Van* is almost identical to Arkansas's forfeiture provision found at Ark. Code Ann. § 5-64-505.[1] Our statute provides in pertinent part:

> (d) Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the director or seizing law enforcement agency *subject only to the orders and decrees of the circuit court* having jurisdiction over the property seized.

(Emphasis added.)

■ This statute vests authority for disposition of seized property in the circuit court. We find the holdings and rationale of the Seventh and Fifth Circuits persuasive. Although not binding on this Court, those decisions offer compelling reasoning for our holding that absent an order of the appropriate circuit court, transfer of seized property by the seizing law enforcement agency is invalid. While we disagree with and reverse the trial court's finding that the Crittenden County Prosecutor's Office was the seizing law enforcement agency, we affirm the court's attempted exercise of jurisdiction over the seized property pursuant to § 5-64-505. Appellant raises many issues on appeal but these issues are essentially resolved by our interpretation of § 5-64-505 to be a "turnover" statute. Accordingly, we affirm the trial court in part and reverse it in part.

Affirmed as modified.

---

[1] Il ST CH 56 ½ ¶ 712(d)