2012 Ark. 372

ARKANSAS FOUNDATION FOR MED-
ICAL CARE; Bryant Healthcare Cen-
ter, LLC d/b/a Bryant Healthcare Cen-
ter; Bryant Holdings, LLC; Perennial
Health Care Management, LLC; Per-
ennial Health Care Holdings, LLC;
Perennial Lease Holdings 6, LLC;
Perennial Leasing, LLC; Perennial
Business Services, LLC; Perennial
Consulting Services, LLC; V. James
Santarsiero, Individually and as Gov-
erning Body of Bryant Healthcare
Center; Jeanne Butterworth, Individ-
ually and as Governing Body of
Bryant Healthcare Center; and, Nan-
cy Brown, in her Capacity as Adminis-
trator of Bryant Healthcare Center,
Petitioners

v.

SALINE COUNTY CIRCUIT COURT,
SECOND DIVISION,
Respondent.

No. 12–88.

Supreme Court of Arkansas.

Oct. 4, 2012.

Rehearing Denied Nov. 8, 2012.

Anderson, Murphy & Hopkins, L.L.P., Little Rock, by: Mariam T. Hopkins and Julia M. Hancock, for petitioners.

Dustin McDaniel, Att'y Gen., by: Ali M. Brady, Ass't Att'y Gen., and Mark N. Ohrenberger, Ass't Att'y Gen., for respondent.

PAUL E. DANIELSON, Justice.

Petitioners, Arkansas Foundation for Medical Care (AFMC) and Bryant Healthcare Center, LLC d/b/a Bryant Healthcare Center; Bryant Holdings, LLC; Perennial Health Care Management, LLC; Perennial Health Care Holdings, LLC; Perennial Lease Holdings 6, LLC; Perennial Leasing, LLC; Perennial Business Services, LLC; Perennial Consulting Services, LLC; V. James Santarsiero, individually and as the governing body of Bryant Healthcare Center; Jeanne Butterworth, individually and as the governing body of Bryant Healthcare Center; and, Nancy Brown, in her capacity as administrator of Bryant Healthcare Center, seek a writ of certiorari, directing Respondent Saline County Circuit Court, Second Division, to quash the subpoena duces tecum served on AFMC. The subpoena demanded the production of all emails (including attachments) between the Arkansas Innovative Performance Program (AIPP) personnel and Jim Santarsiero, Gayle Hughes, and Julie Clark, including ones with subject lines reading "Management Reports & Top Ten." Petitioners argue that the information was privileged and federally protected by 42 U.S.C. § 1320 *et seq.* and other state laws; therefore, petitioners allege, the circuit court plainly, grossly, and manifestly abused its discretion by denying their motion to quash. We deny the petition for writ of certiorari.

The pertinent facts are these. This petition for writ of certiorari arises out of two pending nursing-home-malpractice cases alleging abuse and neglect at Bryant Healthcare Center. The two underlying cases involving former Bryant Healthcare resident Appolonia Chastain and former Bryant Healthcare resident Flora June Evans are being consolidated for purposes of this petition. The plaintiffs below served the aforementioned subpoena on AIPP on December 1, 2011. On December 16, 2011, AFMC served motions to quash in both the Chastain case and the Evans case asserting that the information demanded was privileged under 42 U.S.C § 1320c–9(a), a statute affording privilege for quality-assurance committee data and information consisting of patient records. Bryant Healthcare and the other defendants filed a related Motion for Protective Order in both cases on the same date and asserted that the requested emails were privileged pursuant to Ark.Code Ann. § 20–10–2204(a)(2)(A) and 42 U.S.C § 1396r(b)(1)(B), which provide that consultant reports and quality-assurance committee records are privileged.

The circuit court held a hearing on the outstanding motions in both cases on January 6, 2012. Following the hearing, the circuit court entered orders upholding and enforcing the subpoenas and ordering the production of the information requested. The circuit court did, however, grant a protective order as to the items produced in order to maintain the confidentiality of the substance of the report and prohibited plaintiffs and counsel from sharing the information from AMFC with persons outside the litigation and from using the documents in any cases other than the instant case. Additionally, the circuit court prohibited plaintiffs and counsel from releasing the substance of any of the email attachments for any purpose without prior approval of the court. AMFC filed supplemental pleadings with the circuit court and

asked it to reconsider its ruling; however, the court issued subsequent orders affirming its prior ruling. The instant petition for writ of certiorari was then filed with this court.

There are two requirements that must be satisfied in order for this court to grant a writ of certiorari. *See Jordan v. Circuit Court of Lee County,* 366 Ark. 326, 235 S.W.3d 487 (2006). The first requirement for a writ of certiorari is that there can be no other adequate remedy but for the writ of certiorari. *See id.* Second, a writ of certiorari lies only where (1) it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, or (2) there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *See id.* Thus, a writ of certiorari is appropriate when, on the face of the record, it is apparent that no other remedy is available to correct a plain, manifest, and gross abuse of discretion by the circuit court. *See Chiodini v. Lock,* 373 Ark. 88, 281 S.W.3d 728 (2008). This court has specifically stated that "a writ of certiorari is extraordinary relief, and we will grant it only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record." *Id.* at 93, 281 S.W.3d at 732 (quoting *Ark. Dep't of Human Servs. v. Collier,* 351 Ark. 506, 516, 95 S.W.3d 772, 777 (2003)).

This court will deny a writ of certiorari when it is sought as a remedy for a circuit court's alleged error in a discovery order, even when an alleged discovery violation pertains to matters that the petitioning party claims are privileged. *See Baptist Health v. Pulaski County Circuit Court,* 373 Ark. 455, 284 S.W.3d 499 (2008). However, the petitioners here argue that the instant case goes beyond a mere discovery dispute and implicates the continued viability of a federally created and protected quality-improvement organization, calling into question the federally mandated confidentiality of a federally created program. They allege that an appeal is an inadequate remedy because an appeal would not "remedy the severity of the circuit court's ruling," that "once the disclosure is made, the harm has been done to the program and cannot be undone." AMFC additionally argues that, as a nonparty to the suit, it has no other adequate remedy.

Petitioners believe the instant case to be akin to the extraordinary circumstances presented in *Cooper Tire & Rubber Co. v. Phillips County Circuit Court,* 2011 Ark. 183, 381 S.W.3d 67 and *Ark. Democrat–Gazette, Inc. v. Brantley,* 359 Ark. 75, 194 S.W.3d 748 (2004), in which this court held that the petitions for writs in those cases presented more than a discovery dispute and involved another area of the law that would be impacted.

In *Cooper Tire,* we granted a writ of certiorari and overturned a circuit court's order to compel discovery of investigation reports that involved a faulty tire that had allegedly caused the plaintiff's auto accident. 2011 Ark. 183, 381 S.W.3d 67. The defense argued that the information was privileged as both intangible property and trade secrets. *See id.* The discovery matter there additionally involved an interpretation of the Arkansas Trade Secrets Act. *See id.* This court noted that "a writ of certiorari is appropriate relief in this instance, where the issue is not merely the resolution of a discovery matter but how that resolution interacts with state and federal law protecting trade secrets." *Id.* at 8, 381 S.W.3d 67.

In *Brantley,* this court granted the Arkansas Democrat–Gazette's writ of certiorari where the circuit court ordered the

newspaper to turn over photographs without receiving compensation. 359 Ark. 75, 194 S.W.3d 748. The newspaper argued that was a Fifth Amendment taking of its copyrighted property by the state without just compensation. *See id.* We agreed and granted the newspaper's writ of certiorari holding that "the crux of this case centers around how federal copyright law interplays with [Arkansas Rule of Civil Procedure] 45. Instead of a mere discovery issue, this case is about the control of copyrighted photos. Because of the unique copyright issue and potential copyright infringement, a writ of certiorari is appropriate." 359 Ark. at 78–79, 194 S.W.3d at 751.

Most recently, we granted a writ of certiorari in a discovery matter in *McKenzie v. Pierce,* 2012 Ark. 190, 403 S.W.3d 565, and held that a nonparty's medical records could not be subpoenaed under the circumstances presented in that case. There, McKenzie was a third party with no interest in the underlying lawsuit and would have had no appealable interest in the final order. *See id.*

These cases are all distinguishable from the instant case. Both *Cooper Tire* and *Brantley* dealt specifically with a very narrow issue of intellectual property law and did not establish a broad exception that would allow for interlocutory review of any discovery issue involving any alleged privileged information. Furthermore, in *Brantley,* there was not a question of whether the circuit court could order production of the photographs; rather, the issue was whether the newspaper had to produce them without compensation.

While AFMC argues that it is akin to the petitioner in *McKenzie* because it is not a party to the underlying lawsuit, AFMC's interests would still be protected in the underlying case and in a future appeal. Here, unlike in *McKenzie,* there

is a discovery dispute between the parties. The other petitioners joined with AFMC in this petition *are* parties in the underlying case and also object to discovery on the same grounds.

We have made clear our rationale for not granting a writ of certiorari to correct a perceived error in the circuit court's ruling even when the alleged violation pertained to privileged materials:

This petitioner insists that if it complies with the trial court's order, under protest, its remedy by eventually taking an appeal from the final judgment will be inadequate, for, even if we should hold that the discovery order was an error, the harm will already have been done. In effect it is argued that if the cat is ever let out of the bag it can never be gotten back into the bag. An identical argument can be made whenever a discovery order is objected to. To sustain the argument in this case would mean that we should have to make a similar piecemeal decision whenever an application for discovery is unsuccessfully resisted at the trial level. We have repeatedly held that we cannot review interlocutory orders in this fashion.

*Ark. State Highway Comm'n v. Ponder,* 239 Ark. 744, 745–46, 393 S.W.2d 870, 871 (1965). *See also Monticello Healthcare Ctr., LLC v. Goodman,* 2010 Ark. 339, 373 S.W.3d 256.

Because the order at issue is a mere discovery order in which an alleged discovery violation occurred, and because an appeal would provide an adequate remedy, we deny the petition for writ of certiorari. We take this opportunity to note that the circuit court took the added precaution of entering protective restrictions for the disclosure of these documents—making the

necessity of an emergency writ even more remote.

Petition denied.

CORBIN, BAKER, and GOODSON, JJ., dissent.

GOODSON, J., dissenting.

The majority holds that a writ of certiorari does not lie because this case involves a "mere discovery" issue for which an appeal would provide an adequate remedy. My contrary view is that the writ is an appropriate means to challenge a discovery order compelling the disclosure of information that is alleged to be confidential under the mandate of federal law. Because confidentiality is the very essence of the federal[8] programs affected by this law, the resolution of this discovery matter squarely impacts another area of law so as to warrant immediate review of this discovery order. Therefore, I dissent.

This court has, on several occasions, specifically held that a petition for writ of certiorari is not an appropriate remedy when a party seeks to reverse a discovery order. *Baptist Health v. Circuit Court of Pulaski County*, 373 Ark. 455, 284 S.W.3d 499 (2008); *see also Chiodini v. Lock*, 373 Ark. 88, 281 S.W.3d 728 (2008). Traditionally, we do not entertain a nonparty's petition for writ of certiorari to address discovery issues. *Ark. Democrat–Gazette, Inc. v. Brantley*, 359 Ark. 75, 194 S.W.3d 748 (2004). However, this court has made exceptions "where the issue is not a 'mere' discovery issue but involved another area of law that would be impacted by the resolution of the discovery matter." *Cooper Tire & Rubber Co. v. Phillips County Circuit Court*, 2011 Ark. 183, at 6, 381 S.W.3d 67, 71; *see also Brantley, supra.* In *Cooper Tire*, this court did not hesitate to protect trade secrets from disclosure by issuing a writ of certiorari, and we did so without regard to the availability of a rem-

edy by appeal. Likewise, this court acted swiftly in *Brantley* to prevent a copyright infringement. The claim of confidentiality at issue in this case presents another occasion where an exception should be recognized.

Congress enacted the Medicare program in 1965 to establish a federally funded system of health insurance benefits for the aged and the disabled. *Armstrong v. Dwyer*, 155 F.3d 211 (3rd Cir.1998). Congress subsequently amended the Medicare statute by enacting the Peer Review Improvement Act of 1982, which established a new method of reviewing the quality and appropriateness of the health care provided to Medicare beneficiaries. *Id.* The Act[9] requires the Department of Health and Human Services to enter into contracts with bodies originally known as "peer review organizations" (PROs) that review, inter alia, whether "the quality of such services meets professionally recognized standards of health care[.]" 42 U.S.C. § 1320c–3(a)(1)(A) & (B). In essence, the Act functions as a quality and fiscal check upon the medical services of physicians and institutions that provide health care services under the Medicare and Medicaid programs. *Armstrong, supra.*

Pursuant to 42 U.S.C. § 1320c–9(a), data and information collected by a peer review organization "shall be held in confidence and shall not be disclosed," except in very limited circumstances. *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 444 F.3d 991 (8th Cir.2006). The statute states specifically that information reviewed by a peer review organization in order to determine if the provider's quality of care meets professional standards is privileged from discovery. 42 U.S.C. § 1320c–9(d). Congress has even exempted peer review organizations from the requirements of the Freedom of Information

Act. 42 U.S.C. § 1320c–9(a). In addition, any person who discloses information in violation of the Act's confidentiality provisions is subject to criminal penalties, including a fine and imprisonment of not more than six months. 42 U.S.C. § 1320c–9(c).

The Department of Health and Human Services is charged by statute with the authority to promulgate regulations regarding confidentiality, and it has issued regulations interpreting what information is subject to disclosure and what information is confidential. *Pediatric Specialty Care, supra.* The regulations broadly define confidential information as "(1) [i]nformation that explicitly or implicitly identifies any individual patient, practitioner, or reviewer[;] (2)[s]anction reports and recommendations[;] (3)[q]uality review studies which identify patients, practitioners, or institutions[;] and (4) PRO deliberations." 42 C.F.R. § 476.101(b). Furthermore, "PRO information" includes any information "collected, acquired or generated by a PRO in the exercise of its duties and functions[.]" *Id.* The regulations further state that a peer review organization may only disclose "information on a particular practitioner or reviewer at the written request of or with the written consent of that practitioner or reviewer." 42 C.F.R. 480.133(a)(2)(iii). Thus, peer review organizations generally may not disclose confidential information, subject to limited exceptions not applicable here. *Pediatric Specialty Care, supra.*

Petitioner Arkansas Foundation for Medical Care (AFMC) is Arkansas's quality improvement organization (formerly labeled PRO), and it created the Arkansas Innovative Performance Program (AIPP), as its affiliate, to assist participating nursing homes with identifying whether services meet recognized standards of care and to develop programs to improve the quality of care delivered to nursing-home residents. By subpoena duces tecum, the plaintiffs in the underlying lawsuits are seeking all email communications, including those with subject lines that read "Management Reports & Top Ten," between Kimberly Tackett, AIPP's employee, and Jim Santarsiero, Gayle Hughes, and Julie Clark, who are connected with the defendant nursing home. Petitioners seek review of the circuit court's order compelling discovery by writ of certiorari. Their claim is that the information plaintiffs seek is protected by the confidentiality provisions of the aforementioned federal law. Petitioners explain that participation in the AIPP program is voluntary and that its purpose is to foster the free exchange of ideas in pursuit of quality improvement, which depends upon the assurance of confidentiality as guaranteed by federal law. They urge that releasing the information would have a chilling effect, as nursing homes would decline to participate if such information is subject to disclosure. Further, petitioners maintain that, without confidentiality, AIPP will cease to exist.

I am persuaded that this is not a "mere discovery" issue because the potential ramifications of this discovery order go well beyond a simple discovery dispute. Frankly, what is at stake is the potential for disclosure of confidential information that AFMC is legally obligated, under threat of penalty, to keep inviolate. This discovery matter has the added potential of threatening the continuing viability of a federal program that is designed to improve the quality of care in nursing homes in Arkansas. This court has seen fit to act expeditiously in matters of trade secrets and copyright infringement, recognizing the consequences a discovery order can have on another body of law. Without question, the discovery issue presented here meets the test of impacting another discrete area of the law that prohibits dis-

closure of protected information. Congress has determined that confidentiality is crucial to the success of the federal programs fostered by the Peer Review Improvement Act. A discovery order that potentially infringes upon the confidentiality provisions of the Act are deserving of consideration by this court on an expedited basis. Therefore, I would hold that a writ of certiorari is the proper mechanism to review this discovery order. Regrettably, the majority holds that this discovery issue can only be reviewed by way of appeal. Because that may come to pass, I must refrain from addressing the ultimate issue of ₁₂whether the information falls within the protections of the Act.

CORBIN and BAKER, JJ., join.